*Court of Common Pleas, Dauphin County, December 26th, 1866.*

THE COMMONWEALTH OF PENNSYLVANIA *v.* THE DELAWARE,
    LACKAWANNA AND WESTERN RAILROAD COMPANY.

An act of Assembly imposing a tax upon freight sent from this State into any
    other, or from any other into this, is contrary to the Constitution of the
    United States, and is void.   The legislature has the power to lay a tax
    upon freight carried from place to place within the State.

    BY THE COURT.—Some of the principles involved in this case
came under our consideration in The Commonwealth *v.* The
Erie Railway Company, decided by this court in the early part
of the present year.   The question there presented was: Can the
State tax a transportation company on its tonnage, for goods

[Commonwealth of Pennsylvania *v.* Delaware, Lackawanna and Western R. R.]

carried through its boundaries from and to other States beyond its lines? We held that the act of 13th of April, 1864, so far as it undertook to impose such a tax, was in violation of the Constitution of the United States, and therefore void. For the reasons for that decision, and the authorities which controlled the court in making it, we refer to the opinion on file (1 Pearson, 345). The present case involves two questions: 1st. Can the commonwealth tax the tonnage carried on the defendant's railway, where the transportation is entirely within the State? 2d, Can it impose such tax on articles carried from Pennsylvania into other States, or from other States into this? That a State possesses the control over commerce carried on within her borders, is, as we conceive, a self-evident proposition. It does not come within the provisions of the Federal Constitution, which confers upon Congress the power to regulate commerce with foreign nations and among the several States. It is altogether intra-territorial; is not a power conferred, but reserved. It was not considered necessary to preserve the constituency against the taxing powers of their own legislature, but the power to tax a commodity has long since been held in numerous reported cases, to be the power to exclude it from the State. In Gibbons *v.* Ogden (9 Wheaton, 1), Marshall, C. J., says, in speaking of the authority conferred on Congress by the article cited: "It is not intended to say that these words comprehend the commerce which is completely internal, which is carried on between man and man in a State, or between different parts of the same State, and which does not extend to or affect other States. Such a power would be inconvenient, and is certainly unnecessary." And again: "The completely internal commerce of a State, then, may be considered as reserved for the State itself." These principles have been recognized in numerous other cases, and never questioned in any. It follows as a consequence, that the tax imposed on the tonnage carried on this road solely within the State of Pennsylvania, is strictly constitutional. The tonnage of that character is of class No. 1, 30,581, of No. 2, 5585, and of No. 3, 5416 tons, and the tax amounts in the aggregate to the sum of $1049.97.

2d. The tonnage passing over the defendant's road from this into other States, or from others into this, presents a different question. Congress possesses the same exclusive power to regulate commerce between the different States, that it does with foreign nations. The word "*commerce*," as used in the Constitution of the United States, does not mean trade and traffic alone, it is "*intercourse*" between nations and parts of nations (Gibbons *v.* Ogden, 9 Wheaton, 1; Brown *v.* The State of Maryland, 12 Wheaton, 419; The Passenger Cases, 7 Howard, 407, 444, 458, 4 Wash. C. C. Rep. 378). And this, whether that intercourse be carried on by sailing or steam-vessels, canal-boats, wagons, or railroad cars,

[Commonwealth of Pennsylvania *v.* Delaware, Lackawanna and Western R. R.]

whether upon the high seas, the bays, lakes, and rivers of the country, or canals, railroads, turnpike roads, or ordinary highways. It is well to consider another provision of the Federal Constitution in connection with that already cited. Article 1, section 9, declares, "No tax or duty shall be laid on articles exported from any State." And again, "Nor shall vessels bound to or from one State, be obliged to enter, clear, or pay duties in another." The act of Assembly imposing the tax now in controversy, is so broad as to cover every kind of transportation, whether on the rivers, lakes, railroads, or canals, provided the means of conveyance or the objects on which it is conveyed be owned by a company or corporation. A steamboat belonging to a transportation company is freighted with iron, coal, or lumber, in Pittsburg, destined for St. Louis, and must pay a duty or tax of two or five cents per ton on its whole cargo. If Pennsylvania can impose such a tax, it can be done also by West Virginia, Ohio, Kentucky, Tennessee, and Wisconsin, and thus the article be taxed out of the market, and the free commerce and intercourse between the States, which the Constitution was specially framed and adopted to protect, be frustrated and rendered of no avail. The same burden would be imposed on a cargo of Philadelphia manufactured goods shipped by steamer to Norfolk or Charleston, or of lumber or grain transported from Chicago to Erie. The method of transportation between the States has greatly changed since the adoption of the Federal Constitution, but the same principles apply. Then the commercial intercourse between the States was by sailing-vessels, keel-boats, canoes, wagons, and pack-horses. It is now mainly by railroads, canals, and steamers. Yet, whether it be by the one method or the other, Pennsylvania cannot say to Ohio, If you bring your grain, flour, or pork to our borders, the article shall pay a tax or duty before you are permitted to transport it to Philadelphia for a market. The effect of such laws is well illustrated by Judge Catron in his opinion in the Passenger Cases (7 Howard, 445), and in many other cases; see those already cited, to which may be added the very able opinions of the Supreme Court of the State of Missouri in 27 Mo. Rep. 464, and of the Court of Appeals of New Jersey reported in the Law Register of February, 1865, and also the opinion of Judge Taney in the License Cases (5 Howard, 575). There is a still later case which even more clearly illustrates the jealous care with which the Federal judiciary have guarded the intercourse between the respective States, and repudiated their power in any manner, directly or indirectly, to impose a tax or duty on commodities passing from one to another. We allude to Almy *v.* The State of California (24 Howard, 169). It was there decided that "a stamp duty imposed by the legislature of California upon bills of lading for gold or silver transported from that State to any

[The Commonwealth of Pennsylvania *v.* The Delaware Division Canal Co.]

port or place out of the State is a tax on exports, and the law of the State unconstitutional and void." Showing thereby that the State legislatures could not get around the provision which inhibits their embarrassing the intercourse and trade between the States, or lay any tax or duty thereon. It follows as a sequence, that so much of the act of 1864 as imposes a tax on each ton of commodities passing from other States into Pennsylvania, or from this into other States, is in violation of the Constitution of the United States, and therefore void; and it matters not whether the tax or duty be imposed on the ton, the cord, the thousand, the bushel, gallon, or barrel, or the bill of lading which shows its shipment or affreightment, it is equally improper, and not an object from which any State can lawfully raise a revenue. Therefore we instruct you that so much of the account as charges a tax on the tonnage carried from other States into this, or from this into other States, is unlawful and must be left out of your verdict, which must be rendered in favor of the commonwealth for the tax due on intra-territorial carriage alone, amounting to $1049.97, with interest thereon from June 5th, 1866, to this day, November 26th, $29.90, making in the whole, $1079.87, as calculated by the parties.

(See note to Commonwealth *v.* Erie Railway, 1 Pearson, 356.)

*Meredith, for plaintiff.*

*Kunkel, for defendant.*